415 F.Supp. 662 (1976)
Ben ALLEN et al., Plaintiffs,
v.
AMALGAMATED TRANSIT UNION, LOCAL 788, Defendant.
No. 74-458 C(3).
United States District Court, E. D. Missouri, E. D.
May 27, 1976.
*663 Louis Gilden, St. Louis, Mo., for plaintiffs.
William H. Bartley, Bartley, Goffstein, Bollato & Lange, Clayton, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This matter is before the Court for a decision on the merits following the trial to the Court sitting without a jury.
The plaintiffs, Ben Allen, et al., members of defendant, Amalgamated Transit Union, Local # 788, brought this action in two Counts.
The first Count alleges illegal racial discrimination denying plaintiffs certain rights guaranteed them under the provisions of 42 U.S.C. §§ 1981 and 2000e et seq. It is alleged that for reasons of race, the defendant Union failed to make a valid attempt to obtain seniority rights, and other rights incidental to seniority guaranteed to the plaintiffs under various collective bargaining agreements, and further required plaintiffs to pay an initiation fee of One Hundred Dollars ($100.00) to join the Union.
The second Count of plaintiffs' complaint alleges a denial of plaintiffs' rights guaranteed under 29 U.S.C. § 185 by the alleged acts of the defendant Union in breaching its duty of fair representation with regards to plaintiffs' seniority rights and other rights incidental to seniority. The Court being fully apprised of the premises hereby makes the following findings of fact and conclusions of law.

Findings of Fact
1. Plaintiffs are black citizens of the United States and residents of the State of Missouri and are members of defendant labor organization.
*664 2. The defendant Union is a labor organization which acts as a collective bargaining agent for plaintiffs with the Bi-State Transit System of the St. Louis metropolitan area.
3. In 1959, a Gilman Report was prepared which recommended the merger of various transit companies in the metropolitan St. Louis area into one integrated transit system.
4. In the Gilman Report, the plaintiffs' predecessor employer, The Consolidated Service Car Company, was discussed. It was the recommendation of the Report that The Consolidated Service Car operation be purchased to eliminate competition within the transportation market.
5. The integration of the transit system into a unified whole was to be accomplished in three phases:
Phase I. Establishment of an area-wide integrated system for the metropolitan area.
Phase II. Examination of rapid transit probabilities.
Phase III. Complete the total plan by acquiring plaintiffs' predecessor employer, The Consolidated Service Car Company, and replace that operation with bus service.
6. In accordance with Phase I discussed above, the fifteen St. Louis area transit companies were merged into one corporation, the Bi-State Development Agency, commonly known as the Bi-State Transit System.
7. Transit Services Corporation became the manager of the Transit System, and handled personnel and negotiated collective bargaining agreements.
8. Of the fifteen transit companies merged into the Bi-State Transit System, thirteen had employees with union membership and two had employees without union membership.
9. Of the thirteen transit companies which had union membership, five companies had teamsters locals.
10. After the merger of the transit companies in 1963, some of the merged companies' property consisting of buses and coaches was not used due to its obsolescence.
11. All employees were trained for a period of thirty days at the time of the merger.
12. The employees of the fifteen transit companies were organized as a result of the merger into one collective bargaining unit, who is the defendant in the instant lawsuit. Substantially all of the originally merged employees are white.
13. The merged employees who were organized into the defendant were offered a waiver of initiation fee and full seniority rights for the years that they worked for their respective pre-merger transit companies, and all members of the defendant Union were dove-tailed into one seniority list.
14. With respect to the 1963 merger of the fifteen transit companies, the defendant Union never submitted the issue of waiver of initiation fee and full credit of seniority with each transit line to the Executive Board or to the membership of the defendant Union.
15. The value of seniority for the purposes of defendant Union is:
a. A system pick (where within the entire system a person will work);
b. Division pick (which area within a particular division of the entire system a person will work);
c. Vacation time pick; and
d. Lay-off.
16. The Consolidated Service Car Company was a transit company who the plaintiffs were operators and maintenance men for prior to the purchase of the company by the Bi-State Transit System in 1965.
17. Prior to the purchase of the Service Car Company, the plaintiffs were members of Teamsters Local 688.
18. The purchase of the Service Car operation in 1965 was for the purposes of the Bi-State Transit System, an additional step in the development of a unified transit system.
*665 19. At the time of its purchase, Consolidated Service Car Company submitted a list of operators and maintenance men and the years that each person worked for Consolidated to the Bi-State Transit System, and to which the defendant had access.
20. The Bi-State Transit System offered plaintiffs the opportunity to apply for a job as an operator or a maintenance man, and as each of the plaintiffs entered the Union he was given a thirty day training period as an operator similar to other merged employees. The policy of the International Union is to dove-tail seniority for the years of prior employment to individuals who bring their work with them and their equipment with them.
21. As a result of the purchase of the Service Car and their removal as a transit company from the St. Louis metropolitan area, one hundred and seventy-two additional, daily, round trips, along with new buses were added by the Bi-State Transit System.
22. The above finding of fact clearly indicates that the plaintiffs brought their work and their equipment with them when the Consolidated Service Car Company was merged into the Bi-State Transit System.
23. The Union Executive Board passed a motion after the purchase of the Consolidated Service Car Company to require the Consolidated Service Car operators to pay an initiation fee upon entry into the defendant Union.
24. The plaintiffs did in fact pay such an initiation fee, and did not receive seniority credit for their years of service with Consolidated Service Car Company from either Bi-State Transit System or defendant Union.
25. At the time of the plaintiffs' acceptance as employees by Bi-State Transit System, and at the time of their membership with the defendant Union, there was in existence a collective bargaining agreement which contained the following provision:
Seniority of each of the full-time operators covered by this Agreement shall be on a system basis. The years of service of each of the full-time operators with each of their predecessor transit companies shall be counted from the date of last employment and be given full credit in the seniority roster.
26. The Court finds that the Consolidated Service Car Company was clearly a predecessor transit company even though the purchase took place approximately two years after the merger of fifteen other transit companies.
27. All of the plaintiffs entered the defendant Union on the bottom of the seniority list.
28. Plaintiffs complained in 1968 to various Union officials concerning the denial of their seniority rights, and continued to object to the seniority practices in later years.
29. A motion was made at a Union meeting for seniority rights for the plaintiffs. This motion was refused by the president of defendant Union, due to racial discrimination charges pending at that time.
30. As a result of the actions of defendant Union, the plaintiffs complained to the N.A.A.C.P. and to the Missouri Commission on Human Rights alleging discrimination on the part of the Bi-State Transit System and the Union.
31. Officers of the defendant Union continued to refuse to present the plaintiffs' request for seniority to the Union membership, and in addition stating that they would not recommend the action desired by the plaintiffs.
32. The plaintiffs met with the N.A.A. C.P., Bi-State Transit officials, and the President of defendant Union in 1969. As a result of that meeting, Bi-State Transit agreed to grant the plaintiffs full seniority credit for the years of work for Consolidated Service Car Company for the purposes of (a) vacation benefits, (b) pension benefits and (c) for any other future employment benefits.
33. At the 1969 meeting the President of defendant Union refused to consider any seniority rights changes for the plaintiffs.
*666 34. At a later time, a conciliation agreement was entered into between the Missouri Commission on Human Rights, plaintiffs and the Bi-State Transit System in which the plaintiffs were granted vacation pay due them as if their service time as service car operators had been originally credited to them upon their employment by the Bi-State System.
35. Further, the Bi-State System stated in the conciliation agreement:
Respondent, (Bi-State) will in no way obstruct or impede the dove-tailing of complainants' seniority with that of other drivers on the seniority roster of the Amalgamated Transit Union Local 788.
36. The plaintiffs have been granted full seniority benefits by Bi-State consistent with the applicable collective bargaining agreements.
37. The defendant Union has presented as an alleged defense that there might be morale problems among the Membership if plaintiffs were advanced in seniority over other employees, both white and black.
38. After careful consideration of all the evidence adduced, it is the opinion of the Court that the defendant has asserted no necessity of a business nature for its conduct with regard to the plaintiffs.
39. Since the plaintiffs were the only merged employees treated in this fashion by the defendant Union, and the merged employees of the Consolidated Car Company were predominantly black, the Court is left with the inescapable conclusion that the actions of the defendant were based upon race.

Conclusions of Law
This Court has jurisdiction over the parties pursuant to 42 U.S.C. § 2000e-5(f), 42 U.S.C. § 1981 and 29 U.S.C. § 185.
As the Court stated in its findings of fact, it is clear that the plaintiffs have been discriminated against solely on the basis of race. The chief problem before the Court is the granting of relief due to certain problems dealing with the various statutes of limitations involved.
The defendant has asserted that the action of the plaintiffs is barred by the operation of statutes of limitations particularly with regard to 42 U.S.C. § 1981, and 29 U.S.C. § 185. It must be noted, however, that the plaintiffs have alleged continuing discrimination from 1965 to the present date. In such a situation of continuing discrimination, which the evidence adduced at trial clearly indicates exists, the appropriate statute of limitations merely operates to bar the period of retroactive relief available to the plaintiffs. Jamison v. Olga Coal Company, 335 F.Supp. 454 (S.D.W.Va., 1971).
Since 42 U.S.C. § 1981 and 29 U.S.C. § 185 contain no specific statute of limitations, any limitation period must be derived from the most closely analogous state statute of limitations. With regard to both 42 U.S.C. § 1981 and 29 U.S.C. § 185, it is the opinion of the Court that the proper analogous state statute is the five year Missouri statute of limitations for breach of written contracts, namely, § 516.120, R.S. Mo., 1969. Johnson v. Railway Express Agency, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295, 10 F.E.P. Cases, 817, 820 (1975); Butler v. Local # 823, Int. Bro. of Teamsters, etc., 514 F.2d 442 (8th Cir., 1975); and Wright v. Stone Container Corp., 386 F.Supp. 890 (E.D.Mo., 1974).
With regards to the granting of seniority rights, as stated above, it is clear that the operation of the analogous State statute, here § 516.120, R.S.Mo., 1969, operates to bar relief to all plaintiffs except Ben Allen and Aaron Rutlin from any relief prior to five years from the date of filing this action (July 5, 1974). Jamison v. Olga Coal Company, supra, at 463. Accordingly, as stated in the Order of this Court accompanying this Memorandum, the determination of relief with regard to seniority for all plaintiffs except Ben Allen and Aaron Rutlin will be withheld until a report of this Court's master is prepared.
Since plaintiffs, Ben Allen and Aaron Rutlin, have also alleged jurisdiction under the provisions of 42 U.S.C. § 2000e et *667 seq., and have complied with all jurisdictional prerequisites of that statute, their rights with regard to seniority provisions of the collective bargaining agreement are not governed by a five year period. Franks v. Bowman Transportation Co., Inc., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444, 44 U.S.L.W. 4356 (Mar. 24, 1976). Therefore, the Court will order that plaintiffs, Ben Allen and Aaron Rutlin, be granted their seniority rights in accordance with the procedures utilized for all other pre-merger employees. Since plaintiffs, Allen and Rutlin, have also alleged a cause of action under 42 U.S.C. § 1981, their claim for backpay shall be computed according to the analogous statute of limitations, § 516.120, R.S.Mo., 1969, as discussed above in regard to the other plaintiffs in this action.
After careful consideration of the evidence adduced at trial, it is the opinion of this Court that the instant lawsuit is one where punitive damages under § 42 U.S.C. § 1981 are warranted, Johnson v. Railway Express, supra 421 U.S. 454, 95 S.Ct. 1716, 10 F.E.P. Cases at 819. It is clear that the plaintiff's employer, the Bi-State Transit System, has attempted to remedy the discrimination against the plaintiffs, while the defendant has consistently sought to obstruct the plaintiffs from receiving their proper seniority and other employment benefits. The granting of One Thousand Dollars ($1,000) in punitive damages to each plaintiff is well warranted in the opinion of this Court.
Since 42 U.S.C. § 2000e et seq. has been alleged as a jurisdictional base for this action, and the plaintiffs have prevailed, the Court, after considering the evidence, will award plaintiffs' attorney a fee of Three Hundred Dollars ($300.00) as compensation.
In conclusion, it is the opinion of the Court after careful consideration of all the evidence, along with parties' post-trial memoranda, that the plaintiffs have clearly proven a case of race discrimination, and are entitled to the relief as stated in the order accompanying this Memorandum.

ORDER
In accordance with the Memorandum of this Court filed this date and incorporated herein,
IT IS HEREBY ORDERED that the plaintiffs shall have judgment against the defendant on all Counts of plaintiffs' complaint; and
IT IS FURTHER ORDERED that the defendant pay plaintiffs One Thousand Dollars ($1,000) each as punitive damages; and
IT IS FURTHER ORDERED that the defendant shall reimburse each plaintiff his union initiation fee plus interest at the rate of six percent (6%) per annum from the date of payment of such initiation fee; and
IT IS FURTHER ORDERED that the defendant grant plaintiffs, Ben Allen and Aaron Rutlin, their seniority date from the date of their employment with Consolidated Service Car Company, as granted to all other members of defendant Union; and
IT IS FURTHER ORDERED that the defendant grant seniority to plaintiffs, Abraham Bracy, Charles Cross, Clayton R. Richardson, Frank Smith, Lee Hamlin, Elbert Miller, Mack Hamlin, Claude Riddick, Harold Smith, Ernest Harris, Chester Harris, T. C. Allen and Forest Gay, according to a later supplemental order of this Court, after a report from a special master of this Court as discussed below; and
IT IS FURTHER ORDERED that the defendant shall pay backpay to all plaintiffs as directed by a later supplemental order of this Court after a report by a special master of this Court as discussed below; and
IT IS FURTHER ORDERED that a special master shall be appointed by the Court to hear evidence with regards to the proper seniority date of all plaintiffs except Ben Allen and Aaron Rutlin, and backpay of all plaintiffs in light of the operation of the analogous Missouri statute of limitations, § 516.120, R.S.Mo., 1969; and
IT IS FURTHER ORDERED that the parties shall report to the Court within thirty days (30) of the date of this Order as to whether or not they have found a mutually agreeable master; and
*668 IT IS FURTHER ORDERED that upon the failure of the parties to agree upon such a master, the Court will appoint such a master after thirty days (30) from the date of this Order; and
IT IS FURTHER ORDERED that the defendant shall pay plaintiffs' attorney, Louis Gilden, an attorney's fee in the amount of Three Hundred Dollars ($300.00); and
IT IS FURTHER ORDERED that the defendant pay all costs, including those of the special master, incurred in this action; and
IT IS FURTHER ORDERED that the defendant be and is permanently enjoined from any further racial discrimination against the plaintiffs.